IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROBERTO FRANCISCO GARCIA-MORALES,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

CIVIL NO. 05-2287 (CCC)
Re: Criminal No. 01-079 (CCC)

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

Petitioner Roberto Francisco García-Morales (hereinafter "petitioner García-Morales") is presently serving a sentence upon conviction after a jury trial of two hundred and ninety two (292) months of imprisonment and a supervised release term of five (5) years for a conspiracy to possess narcotics with intent to distribute as charged in a one-count Indictment in Criminal No. 01-709 (CCC).[1] The events related to the offense charged involved also a co-defendant who obtained severance at trial. The offense entailed the participation of herein petitioner García-Morales with a confidential informant and with an undercover U.S. Customs agent in a drug smuggling operation from St. Maarten to Puerto Rico as to which a controlled delivery was carried out. Said conviction was affirmed on appeal.

Petitioner García-Morales initially filed a *pro-se* motion for post-conviction relief under Title 28, United States Code, Section 2255, in regards to his federal conviction and

---

[1] A conspiracy to possess with intent to distribute an excess of five (5) kilograms of cocaine, and in excess of one (1) kilogram of heroin in violation of Title 21, United States Code, Section 846.

sentence. Petitioner's motion for post-conviction relief is predicated on grounds his trial counsel was ineffective in failing to inform him of his right to testify at trial. The main gist of petitioner García-Morales' request for post-conviction relief is that trial counsel was ineffective for failure to inform him of the right to testify at trial because he claims he always wanted to present his version of facts before the jury. (*Docket No. 1*).

The motion was initially denied and judgment was entered dismissing with prejudice the petition. After a certificate of appealability was granted, an appeal was filed. The Court of Appeals for the First Circuit remanded for an evidentiary hearing and the matter was referred to this Magistrate Judge for a hearing on the issue of ineffective assistance of counsel and for report and recommendation. The mandate was received and filed on August 6, 2009. (*Docket No. 36*).

Prior to entertaining evidentiary matters on remand, counsel Raymond L. Sánchez-Maceira was appointed and provided with an opportunity to amend the petition and interview petitioner. The U.S. Marshal was ordered to arrange for the transfer of petitioner García-Morales from the main land to MDC Guaynabo, within the jurisdiction of this Court. Petitioner and counsel were then allowed time to examine all available proceedings and obtain necessary transcripts or copies thereof. On September 2009 and October of 2009, several Status Conference were held. Counsel Sánchez-Maceira also requested an opportunity to interview two (2) inmates who had shared time with petitioner at the time of the criminal proceedings. One of these possible witnesses, Mr. José Cotto-LaTorre, required to be transferred from the main land to MDC Guaynabo to be available for the evidentiary hearing. The government was provided the opportunity to bring as witness

former counsel for petitioner Roberto Roldán-Burgos, whose travel needs required some accommodation because he is currently residing outside the district of Puerto Rico. Finally, the evidentiary hearings were entertained on December 28, 2009, January 15, 2010 and January 29, 2010. (*See Docket Nos. 63, 66, 67*).

Upon conclusion of the evidentiary hearings, counsel Sánchez-Maceira requested an opportunity to file a post-hearing memorandum and the government was allowed to file a reply. On February 17, 2010, counsel for the petitioner filed his memorandum claiming in essence trial counsel never advised petitioner that the ultimate decision as to whether he would testify was his and trial counsel's failure to present any evidence was prejudicial. (*Docket No. 71*). On March 9, 2010, the government filed its reply after an extension of time was granted. The government avers petitioner was aware of his right to testify at trial and, assuming *arguendo* that trial counsel was ineffective, petitioner has not proved the outcome would have been different. (*Docket No. 74*).

We are now in a position to dispose of the issues raised and referred to the undersigned.

**EVIDENTIARY HEARING**

Petitioner García-Morales submitted the testimony of inmate Rafael Cotto-LaTorre who was at MDC Guaynabo in the year 2003 while awaiting trial for drugs and weapons' law violations and became friends. The witness also met with petitioner at the Coleman Penal Institution in Florida and provided a sworn statement in the year 2006. Succinctly, the testimony of Mr. Cotto-La Torre was as to comments of petitioner while at the cell block in the U.S. Marshals' facilities at the courthouse in Puerto Rico when petitioner was brought

over for pending criminal proceedings. When counsel for petitioner Roldán-Burgos appeared to explain about the jury trial to be held, petitioner García-Morales complained of not being prepared and of counsel not having visited him for a long time. The attorney insisted there was no evidence because the government had withdrawn the same. Petitioner García-Morales was crying since he did not want to go to trial. They met again several weeks later while each of their respective trials was ongoing, around February 11, 2003, as well as at MDC Guaynabo. Regarding petitioner's arguments for the post-conviction petition, Mr. Cotto-LaTorre testified having no knowledge in regards to petitioner's desire to testify at his trial.[2]

    Petitioner García-Morales testified regarding his claim of ineffective assistance of trial counsel Roldán-Burgos. Petitioner filed two (2) motions with the Court complaining about his counsel because he noticed some apathy in showing his innocence, which he always sustained since the arrest. García-Morales made reference to a statement he provided at the time of arrest and the last two (2) sentences therein would have been his defense, but was never introduced as evidence nor was petitioner's testimony presented to the jury. The letter received on August 20, 2002, from Atty. Roldán-Burgos, refers to said statement being exculpatory and being beneficial to introduce same as evidence. **(Exhibit**

---

[2] Mr. Cotto-LaTorre's statement was made part of Exhibit B, together with the Appendix in support of the Section 2255 petition.

1).[3] Petitioner considers it was his counsel's task to do what was indicated in the letter.[4] Petitioner understood that, since the government had lost the video of the meetings with co-defendants and the audio tape was inaudible because of battery problems, presenting his own testimony with his own version of facts would have been a matter of credibility for the jury. As a defendant, petitioner had no prior criminal history, had an impeccable work history and his penal institution behavior had been excellent. Although there are some photos of the meeting held between the defendants, the informant and the undercover back in October 2001, they show no delivery of drugs whatsoever. Regarding the personal items that were seized from petitioner at the time of the offense showing his connection to the drug supplier known as "Tocayo", petitioner García-Morales' complains of having no opportunity to explain his side of the story although Atty. Roldán-Burgos held an eight (8) page report and never explained what petitioner was doing at the time and why. According to petitioner at this time, he was initially present in Puerto Rico, as arranged by an individual he knew as "Javier" in Miami,[5] to assist in dealing with refined gold with some friend petitioner had in Old San Juan, Puerto Rico, that was to be transported to Venezuela without filing a custom declaration. Thereafter, petitioner held a meeting with the individuals depicted in the photos introduced at trial as part of the conspiracy but he

---

[3] This letter also answers some of petitioner's inquiries to counsel and ascertaining that, during trial, counsel would argue all issues which upon mutual consultation would be deemed important.

[4] The letter is dated August 20, 2002 and trial in petitioner's case was held on February 14, 2003, as evidenced from the criminal docket entries.

[5] The Section 2255 petition describes said "Javier" as Mr. Javier Gómez, from Venezuela, who petitioner García-Morales considered a friend of approximately five (5) years and a business contact for approximately nine (9) years. Petitioner states Javier paid for the flight, hotel and expenses to have García-Morales purchase gold in Puerto Rico for his business in Venezuela. *Petition, p. 9; Exhibit 5.*

explains the meeting was instead in regards to construction materials to be brought from Venezuela to Puerto Rico. Petitioner therein provided a business card with all his information. Regarding the vehicle that is alleged to have been used for drug trafficking, the Dodge Caravan, it is petitioner's position he was told by Javier, after the first meeting in Plaza Las Americas, to assist another individual, a co-defendant in his case, to pick it up because it was leased and had to be returned. Petitioner obtained the keys from undercover agent Carmona, at Plaza Carolina, who testified as his trial, because he already knew Carmona from the first meeting held in Plaza Las Americas, but petitioner never saw what was inside the van nor where it was located nor drove the van.

The Court must notice, however, the alleged exculpatory statement provided at the time of arrest is rather inconsistent with petitioner's statement at the evidentiary hearing. (**Exhibit 1**). Therein García-Morales mentions the gold deal but makes no reference in regards to the undercover agent Carmona whom he had previously met at Plaza Las Americas. Rather, he refers in the statement to not knowing the individual who delivered to him the keys to the van at Plaza Carolina, who is described as a stocky, dark-skinned person who told him to accompany him to drink a cup of coffee, a person who spoke little and only told him to give the keys of the car to his co-defendant "Tony" (José Antonio Boada-Alfonso),[6] with whom petitioner drove to Plaza Carolina in regards to the Dodge Caravan vehicle they were to pick up, which contained the narcotics object of the conspiracy. No reference to the construction business meetings now presented by

---

[6] Tony had picked up García-Morales at the hotel driving and drove to Plaza Carolina. Once petitioner García-Morales received the keys from the "stocky, dark-skinned person" at Plaza Carolina, who happened to be undercover agent Carmona, he delivered them to Tony who in turn gave them to another individual who was skinny and dark skin.

petitioner during his testimony at the evidentiary hearing was made in the post-arrest statement.

García-Morales also stated at the evidentiary hearing that at trial, upon conclusion of the government's case, there was no conversation with his counsel on whether he was to testify or not. However, a perusal of the available trial transcripts in this case shows that trial counsel was indeed active in attempting to raise doubts with the jury as to the missing recorded video and the inaudible conversation that could not be recorded by the surveillance team or by the confidential source at the time of making a deal with the defendant. The transcript also shows that, upon conclusion of the government's evidence, the Court verified whether petitioner would be presenting evidence. It also shows counsel Roldán-Burgos conferring with petitioner García-Morales to make sure whether they would be presenting any defense evidence. After consulting with petitioner, Atty. Roldán-Burgos stated to the Court his client García-Morales had confirmed no defense evidence was to be presented. *Jury Transcript 2-27-2003, pp. 27-28 (Docket No. 174)*.

On cross-examination, petitioner admitted he was involved in his defense and litigation of his case. Petitioner admitted he had discussed his case and the legal system with other inmates at MDC Guaynabo including his right to testify and what he should do if he was not satisfied with his counsel. In fact, petitioner filed a *pro-se* motion raising legal issues which was prepared by another inmate who was proficient in English. Thus, petitioner took it upon himself to learn about the American Justice System and help in his defense.

Roberto Francisco García-Morales v. United States
Civil No. 05-2287 (CCC)
Report and Recommendation
Page No. 8

At the evidentiary hearing the respondent presented the testimony of trial counsel for petitioner García-Morales, Atty. Roldán-Burgos. Mr. Roldán-Burgos formerly practiced law in the Commonwealth of Puerto Rico and the federal court in this jurisdiction since 1995. He had prior practice with the Civil Rights Institute on police misconduct and criminal related work cases and then in private practice with civil and criminal law in state and federal court. He had represented other defendants as lead attorney in drug related cases and in some twelve (12) to twenty (20) federal criminal cases before he was appointed to represent herein petitioner García-Morales.

Mr. Roldán-Burgos testified being fully aware of petitioner's right to testify at trial and in a few cases some of his clients had indeed testified. Petitioner García-Morales' case dealt with a Customs' sting operation where government agents and an informant participated. He visited his client at MDC Guaynabo on several occasions in regard to the evidence, deposited envelopes for him to examine and provided written communications, including Exhibit 1. Mr. García-Morales demanded certain things, such as photos, motions to be filed, and he was explained he had no standing to seek suppression and was explained some of the "mistakes" he discussed in the case were not for pretrial issues but as strategies for trial, if appropriate. Petitioner García-Morales, being a smart individual, was very active in the case, was very involved and verified things he would considered as inconsistent.

Mr. Roldán-Burgos, following information provided by his client García-Morales, interviewed by telephone one (1) witness as to the refined gold claim, a jeweler in Old San Juan, who was not willing to testify at trial and had some problems with falsity, for which it was determined not to be presented as a witness since the proposed testimony would not

serve to verify petitioner García-Morales' position. Counsel Roldán-Burgos prior to the trial date assisted in getting Mr. García-Morales' size for shoes and clothes to be provided at trial although initially García-Morales wanted to plea instead of going to trial. Counsel Roldán-Burgos approached former AUSA David Rivera for such purposes but the plea did not materialize. Discussions were held with Mr. García-Morales at the beginning of the case but once the government had rested he was made aware the defense would be resting also and any mistakes regarding the government's case were to be argued to the jury.

On cross-examination, Mr. Roldán-Burgos explained his trial strategy was that on the government's blunder of the case, by misplacing the video recordings and not being able to record conversations with the equipment, in the absence of petitioner corroborating with his testimony some of the things that were essential to the prosecution, he had the opportunity to argue to the jury reasonable doubt. The decision not to testify was made through out the process but at the close of the government's case Mr. Roldán-Burgos indicated to petitioner García-Morales the defense would be also resting and making arguments to the jury to which petitioner had no objection. Mr. García-Morales had been previously given explanations regarding why he should not testify, including that he would be subject of cross-examination not only to state his side of the story. The trial strategy, which Mr. Roldán-Burgos acknowledges now it was a judgment call not to have petitioner testify at trial and that the strategy to have the government meet its burden had failed. However, he considered at the conclusion of the government's case he would still be able to argue reasonable doubt before the jury, which would have been dissipated if petitioner took the stand and was cross-examined on things that were not favorable to him. It was

Roberto Francisco García-Morales v. United States
Civil No. 05-2287 (CCC)
Report and Recommendation
Page No. 10

also considered that petitioner García-Morales would have at least to acknowledge before the jury the post-arrest statement that he came to Puerto Rico to smuggle gold, that he was indeed present at scenes the government had not established and that he was very nervous and would not stand up to the government's cross-examination. Roldán-Burgos also testified at the evidentiary hearing it was considered García-Morales had no reasonable explanation why he came to Puerto Rico, not being a sound strategy to present when the government was not forcing him to bring one before the jury. It was considered a judgment call not to have petitioner to testify at the trial.

Although counsel Roldán-Burgos testified he did not recall telling petitioner that the ultimate decision to testify was his, upon a consideration of the evidence presented at the evidentiary hearing,[7] including petitioner's admissions as to his participation in his defense and his prior knowledge of his right to testify, his testimony at the hearings, which due to numerous inconsistencies has been afforded limited credibility, as well as the explanations of the trial strategy followed by trial counsel, together with a finding that petitioner García-Morales was fully aware of his right to testify in the criminal proceedings, the following discussion of the applicable law is presented.

## LEGAL DISCUSSION

In a Section 2255 petition a district court may grant relief to a federal prisoner on grounds that the sentence was imposed in violation of the Constitution and laws of the United States. To evaluate claims of ineffective assistance, a petitioner must establish that

---

[7] In addition to petitioner's Exhibits 1 and 2, the government submitted Exhibits A, B and C. Exhibit A is petitioner's motion requesting disclosure of tape recorded conversations and photographs filed on June 19, 2002. Exhibit C is the petitioner's motion/memorandum of law in support of the Section 2255 petition.

(1) counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms and (2) there is a reasonable probability that but for counsel's unprofessional performance, the outcome of the proceedings would have been different. *See* Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984).

The legal standard applicable to the above-captioned petition is pellucidly clear. Petitioner must show both that counsel's performance fell below an objective standard of reasonableness and that prejudice resulted. *See* Strickland; López-Nieves v. United States, 917 F.2d 645, 648 (1st Cir. 1990). Counsel's performance must be examined "not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented." *See* United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991). The "range of reasonable professional assistance" is quite wide. Strickland, 466 U.S. at 689. Therefore, as the Supreme Court has noted, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*.

In a long line of cases, the Supreme Court of the United States has recognized that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. *See* Gideon v. Wainwright, 372 U.S. 335 (1963); Johnson v. Zerbst, 304 U.S. 458 (1938); Powell v. Alabama, 287 U.S. 45 (1932). The Court has recognized that "the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771, n. 14, (1970). Counsel can deprive a defendant of the right to effective assistance, simply by failing to render "adequate legal assistance" Cuyler v. Sullivan, 446 U.S. 335, 345-350 (1980) (*finding* actual conflict of interest adversely affecting lawyer's performance renders assistance ineffective).

The Supreme Court has developed a two (2) prong test for evaluating claims of ineffectiveness of counsel. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687. Unless both showings are made, it cannot be said that the conviction or. . . sentence resulted from a breakdown in the adversary process that renders the result unreliable. *Id*.

In applying this standard, a reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [legal] strategy.'" Strickland at 689, 104 S.Ct. 2052 (*quoting* Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158 (1955)).

The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. Lockhart v. Fretwell, 506 U.S. 364, 369 (1993); Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). This two (2) prong standard has its justification in the fact that the government is not responsible for, and hence not able to prevent, attorney's errors that will result in reversal of a conviction or sentence. Attorney's errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. Hill v. Lockhart, 474 U.S. 52, 57 (1985).

The constitutional right to testify in one's defense is considered fundamental and may not be waived by counsel on the defendant's behalf. Rock v. Arkansas, 483 U.S. 44, 53, n. 10, 107 S.Ct. 2704, 2710, n. 10 (1987). The defendant has the ultimate authority to make

certain fundamental decisions regarding the case, including among them the right to testify on his or her own behalf. Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312 (1983).

Turning to the instant case, the evidence before this Magistrate Judge reveals petitioner García-Morales was fully aware of the right to testify at trial. Petitioner admitted in cross-examination he learned of his right to testify at trial from conversations with other inmates which took place prior to the jury trial. Moreover, petitioner was active in his defense as the record shows and he took it upon himself to learn about the American legal system. Petitioner was also informed of his right to testify by his counsel and he had an opportunity to testify, upon being consulted at the conclusion of the government's case. As mentioned above, the transcript of the jury trial shows that, upon conclusion of the government's evidence, the Court verified whether petitioner would be presenting evidence. It also shows counsel Roldán-Burgos conferring with petitioner García-Morales to make sure whether they would be presenting any defense evidence. After consulting with petitioner, Atty. Roldán-Burgos stated to the Court his client García-Morales had confirmed no defense evidence was to be presented. *Jury Transcript 2-27-2003, pp. 27-28 (Docket No. 174)*. As such, the claim that petitioner was not aware of his right to testify at trial is defied by his behavior during the pendency of the criminal proceedings, his behavior during the jury trial, his own admissions at the evidentiary hearing and the testimony of his trial counsel at the evidentiary hearing.

Moreover, petitioner has failed to show that his trial counsel was ineffective. Petitioner must allege and demonstrate that his counsel's error clearly resulted from neglect or ignorance rather than from informed, professional judgment. United States v. Bosch,

Roberto Francisco García-Morales v. United States
Civil No. 05-2287 (CCC)
Report and Recommendation
Page No. 14

584 F.2d 1113, 1121 (1st Cir. 1978) (citing Marzullo v. Maryland, 561 F.2d 540, 544 (4th Cir. 1977)).

Counsel Roldán-Burgos clearly explained the reasons why petitioner's testimony was not presented as a sound legal strategy. *See* Lema v. United States, 987 F.2d 48, 52 (1st Cir. 1993) (citing United States v. Teague, 953 F.2d 1525, 1534-35 (11th Cir. 1992)). Thus, unaccompanied by coercion, legal advice concerning exercise of the right to testify infringes no right. Reasonable trial strategies lead to a presumption that counsel's conduct was nothing but a sound trial strategy that at the end failed to provide a favorable verdict for petitioner. Even when counsel focuses on some issues to the exclusion of others, there is a strong presumption it was done for a tactical reason, not by sheer neglect. Yarborough v. Gentry, 540 U.S. 1, 8, 124 S.Ct. 1 (2003); Strickland, 466 U.S. at 689, 104 S.Ct. 2052; Knight v. Spencer, 447 F.3d 6 (1st Cir. 2006).

Trial counsel testified he attempted to have a witness proposed by defendant García-Morales to establish the reason he came to Puerto Rico was to engage in gold smuggling, but said witness refused to testify.[8] Counsel Roldán-Burgos even indicated in his sworn testimony at the evidentiary hearing that said witness' testimony would not verify García-Morales' version and would show the explanation proposed by García-Morales was not reasonable.[9] Counsel Roldán-Burgos acknowledged that his trial strategy to attack the government's evidence forcing the government to meet its burden of proof and allowing for

---

[8] The decision to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony. Lema v. United States, 987 F.2d 54.

[9] Decision not to pursue certain witness falls within range of reasonable professional assistance, in light that the witness would have added little if anything, to the defense. Cepulonis v. Ponte, 699 F.2d 573, 575 (1st Cir. 1983).

an opportunity, without petitioner's testimony, to argue reasonable doubt to the jury indeed failed upon the return of a guilty verdict. However, strategic choices on the part of counsel will not be second guessed by the courts. United States v. McGill, 11 F.3d 223, 227-28 (1st Cir. 1993). An attorney's judgment need not necessarily be right, so long as it is reasonable. Id.[10]

In light of all the above discussed, together with the summary of the evidence presented in the evidentiary hearing before this Magistrate Judge, it is concluded that herein petitioner did not overcome the presumption that his trial counsel acted reasonably. United States v. Soto Alvarez, 958 F.2d 473 (1st Cir. 1992); United States v. Moreno-Morales, 815 F.2d 725, 751 (1st Cir. 1987); United States v. Talavera, 668 F.2d 625, 632 (1st Cir. 1982). It is clear that the decision not to have petitioner on the stand was shown to be at the evidentiary hearing as a strategic choice.

Furthermore, the record belies petitioner's statement that he would have had a fair opportunity to prevail, for which it would be deemed to have suffered a detriment in his defense that amounted to ineffective assistance. The documents admitted in evidence at the evidentiary hearing, including petitioner's written post-arrest statement together with petitioner García-Morales' testimony before this Magistrate Judge, show significant gaps and inconsistencies that would not have defeated the government's case which was sustained by the testimonies at trial of an undercover agent. We agree with the government

---

[10] Counsel for petitioner attempted to argue defendant's lack of satisfaction with the tactics of his trial counsel, while Roldán-Burgos acknowledged García-Morales' attempt to have him follow every instruction and lead. Counsel's decision not to abide by the wishes of his client has no necessary bearing on the question of professional competence and listening to a client, rather than to the dictates of professional judgment may itself constitute incompetence. McGill, 11 F.3d at 227 (citing Bell v. Georgia, 554 F.2d 1360, 1361 (5th Cir. 1977)).

that if petitioner would have testified at trial, he would have been cross-examined and impeached on the inconsistencies between his testimony explaining his side of the story and the self-serving statement he provided at the time of his arrest. Thus, petitioner's credibility would have been questioned. Moreover, the events leading to petitioner's arrest for the offense of conspiracy had a trail that was followed and verified by a U.S. Customs' investigation prior to the arrest of the defendants with the importation of the narcotics from St. Maarten, their receipt in Puerto Rico where they were seized, the defendants meetings in Puerto Rico and the various arrangements to transport the narcotics during the control delivery that was subject to surveillance by numerous agents, regardless that the video and/or audio recordings had a malfunction or were missing at trial. There were still photographs of these meetings which were admitted in evidence. As such, the result of the jury trial would not have changed.

In sum, petitioner has not established, as required for post-conviction relief based on ineffective assistance, that defense counsel's performance was deficient and also that it was so prejudicial to undermine the confidence in the outcome of trial and the fundamental fairness of the result. Strickland, 466 US at 693-94, 104 S.Ct. 2067-68; Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838 (1993).

As above discussed, and absent from the record any matter that would persuade this court to conclude the defense counsel provided petitioner with anything other than

reasonable professional assistance, petitioner's claim for post-conviction relief is without merit.[11]

## CONCLUSION

Considering the above discussed, this Magistrate Judge finds petitioner García-Morales has submitted no grounds which would entitle him to post-conviction relief inasmuch as he has failed to establish by preponderance of the evidence ineffective assistance of counsel. Moreover, petitioner was well aware of his right to testify at trial. Accordingly, it is recommended that petitioner García-Morales' post-conviction motion under Section 2255 (Docket No. 1) be **DENIED**.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation.[12] Amended Fed. R. Crim P. 59 (b)(2). *See also* Amended Local Rules.[13] Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d

---

[11] Counsel for petitioner attempted to introduce other arguments on issues that were not subject of the post-conviction relief certificate of appealability. Knowing when to quit is often a hallmark of commendable courtroom advocacy. McGill, 11 F.3d at 228.

[12] The parties should disregard the statement included in the Order at Docket No. 73 that the period of time to file objections to this report and recommendation was going to be reduced to five (5) business days.

[13] Local Rule 72 (d), as amended December 3, 2009 provides:
  **(d) Objections to Report of Proposed Findings and Recommendations as to Dispositive Motions and Prisoner Cases.**
  Any party may object to the magistrate judge's report of proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1) within fourteen (14) days after being served a copy of it. The party shall file with the clerk and serve on all parties written objections which shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection.

Roberto Francisco García-Morales v. United States
Civil No. 05-2287 (CCC)
Report and Recommendation
Page No. 18

985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

In San Juan, Puerto Rico, this 10th day of March of 2010.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE